# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

BRIAN ADAMS,

    Petitioner,

    -vs-

WARDEN, Lebanon Correctional Institution,

    Respondent.

:

:

:

Case No. 1:09-cv-264

District Judge Michael R. Barrett
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Petitioner Brian Adams seeks habeas corpus relief from his conviction in the Clermont County Court of Appeals on two counts of aggravated murder and his subsequent sentence to life imprisonment without the possibility of parole. On Magistrate Judge Hogan's Order (Doc. No. 3), the Respondent has filed an Answer/Return of Writ which reveals the following procedural history.

### Procedural History

On October 31, 2007, an Indictment was filed against the Defendant charging him with two counts of aggravated murder without capital specifications (Return of Writ, Doc. No. 10, PageID 78). On the same day, Defendant entered a written plea of guilty to both counts. *Id.*, PageID 79.

Exhibit 13 is a transcript of the plea colloquy on October 31, 2007. It shows that Mr. Adams

had previously been indicted on a charge of aggravated trafficking in cocaine and then an additional indictment returned with the aggravated murder charges. October 31st was his first appearance on the murder charges, but there had been extended discussions over the prior two weeks "about the possibilities of what could happen in this case." PageID 120. Although it would be unusual to enter a plea at initial appearance, Mr. Adams said that he was comfortable proceeding. *Id.* Judge Ringland advised him that he had the right to wait twenty-four hours before proceeding, but he indicated he wanted to proceed then and acknowledged signing a waiver of the twenty-four hour period. *Id.* The prosecutor represented to the Court that he had discussed with Mr. Adams and his counsel that the facts of the case would have supported a capital specification, since both victims were murdered as part of the same course of conduct. *Id.* at PageID 122. The State agreed not to seek a capital specification or a firearm specification, to dismiss the aggravated trafficking case, and to stand mute at sentencing in return for the guilty plea. Id. at PageID 123. As part of the plea negotiations, defense counsel was furnished with extensive discovery.

Judge Ringland proceeded at length to discuss with Mr. Adams the rights he was giving up by pleading guilty and the possible sentences which could be imposed. He then again went through those rights to ensure that Mr. Adams had discussed them with counsel. Finally, Petitioner acknowledged that he was satisfied with the advice counsel had given him. *Id.* ,PageID 137. In addition to pleading guilty orally, Mr. Adams signed a written plea of guilty. *Id.* PageID 139. The prosecutor read a statement of facts indicating that Mr. Adams had shot and killed Mark Thiele and Kimberly Butler on September 7, 2007. Offered a chance to do so, Mr. Adams had no disagreement with the statement of facts and admitted that they were true. *Id.* PageID 141-142. Judge Ringland found that the plea was made knowingly, intelligently, and voluntarily. *Id.*.

After a presentence investigation, Judge Ringland, on November 29, 2007, imposed two terms of life imprisonment without the possibility of parole, to be served consecutively to one another. *Id.*, Judgment Entry of Sentence, PageID 82. Mr. Adams filed a Notice of Appeal on March 13, 2008, 105 days later. *Id.* PageID 84. On the same day, he filed a Motion for Leave to File a Delayed Appeal in which he filled in his name on a pre-printed form. *Id.*, PageID 87. In support of this Motion, he hand wrote on a pre-printed Affidavit form the following:

> Defendant was sentenced by the Court on November 28, 2007, and remained in Clermont County Jail until December 5, 2007. He was then transported to the Correction Reception Center where he was placed in the Orientation Housing Unit (R-2) until he was moved to general population (B-2) on December 10, 2007. The Orientation Housing Units are denied access to the law library. Once placed in general population, Defendant requested access (via kite), but didn't obtain his initial access to the law library until December 19, 2007. The Defendant was further delayed from December 20 - December 31, 2007, due to the Holidays. Additionally, the 12th District Court of Appeals requires that indigent inmates fill out a certificate of inmate funds and affidavit of indigency if he cannot pay the deposit. The certificate of inmate funds must be filled out by the cashier's office. Defendant requested a completion of certificate (via kite) on January 18, 2008, and received a response on February 28, 2008. Defendant is also required to provide a copy of the sentencing entry. He sent a request to the Clermont County Clerk of Courts on January 19, 2008, and received the sentencing entry on February 4, 2008. Finally, when a Defendant gains access to the law library, notary services, copies, certificate of inmate funds, and his free legal kit, then he will obviously be beyond the 30 day requirement of Appellate Rule 4.

*Id.*, PageID 89.

As assignments of error he intended to raise if granted a delayed appeal, Petitioner wrote:

> He was represented by ineffective assistance of counsel and his due process rights were violated due to the fact that his guilty pleas were not made with full knowledge of the consequences of his plea. Also, Appellant plead guilty under extreme pressure and in an unknowing and unintelligent manner. The Appellant further believes his

> additional rights guaranteed by the U.S. Constitution may have been violated in light of his involuntary plea.

*Id.* The pre-printed form which Petitioner used for the Affidavit contains the sentence "Appellant asserts that he did not knowingly or intelligently waive his right to direct appeal." The prosecutor opposed the Motion, pointing out that Petitioner had written to the Clerk of Courts at least once within the thirty-day appeal period, but asked for a copy of the docket sheet instead of sending in a one-page notice of appeal (Memorandum, Ex. to Return of Writ, PageID 93-94.) On April 16, 2008, the Court of Appeals denied the Motion for Delayed Appeal without an explanation of its reasons. *Id..*, Ex. 8, PageID 95.

On May 29, 2008, Mr. Adams appealed to the Ohio Supreme Court. *Id.* Ex. 9. In support, he claimed the Court of Appeals was required to appoint him an attorney and to allow the delayed appeal.[1] The Ohio Supreme Court declined to exercise jurisdiction without explanation. *Id.* Ex. 12, PageID 117. Mr. Adams then filed the instant Petition, pleading three Grounds for Relief:

> **Ground One:** Appellant was denied counsel for appeal.
>
> **Supporting Facts:** Appellant was denied counsel for direct appeal.
>
> **Ground Two:** Appellant denied direct appeal.
>
> **Supporting Facts:** Appellant exercised due diligence in filing delayed appeal.
>
> **Ground Three:** Ineffective assistance of trial counsel.
>
> **Supporting Facts:** Trial counsel advised client to plead guilty on same day appointed to case where Defendant is charged with two counts of Aggravated Murder.

---

[1] He asserts in his Memorandum in Support of Jurisdiction that he requested appointment of counsel in the Twelfth District Court of Appeals, but that that court never ruled on the request. No such request for counsel, whether separate or embodied in another filing, is before this Court.

(Petition, Doc. No. 1, PageID 5-8.)

### Grounds One and Two

In his first Ground for Relief, Petitioner asserts that he was denied counsel for his direct appeal; in his second Ground, he claims he was denied his direct appeal altogether.  These claims are closely related and will be analyzed together.

There is no federal constitutional right to an appeal from a state court criminal conviction. *McKane v. Durston*, 153 U.S. 684 (1894), cited as still good law in *Lopez v. Wilson,* 426 F.3d 339, 355 (6th Cir. 2005).  "Due process does not require a State to provide appellate process at all." *Goeke v. Branch*, 514 U.S. 115, 120 (1995).

When a State creates a criminal appeal process, it may not discriminate against indigent criminal appellants by denying them an appeal based on their inability to obtain counsel or a transcript of trial court proceedings. *Griffin v. Illinois*, 351 U.S. 12 (1956). As a matter of federal constitutional law, counsel must be appointed on appeal of right for indigent criminal defendants. *Douglas v. California*, 372 U.S. 353 (1963).  However, the right to appointed counsel extends to the first appeal of right and no further.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Ross v. Moffitt*, 417 U.S. 600 (1974).

Ohio Revised Code § 2953.02 provides that "the judgment or final order of a court of record inferior to the court of appeals may be reviewed in the court of appeals."  The Ohio Rules of Appellate Procedure distinguish between appeals of right (Ohio R. App. P. 3) and appeals by leave of court in criminal cases (Ohio R. App. P. 5).  Ohio R. App. P. 4 provides that the notice of appeal

required by Ohio R. App. P. 3 be filed within thirty days of the entry of judgment in a criminal case. Ohio R. App. P. 5(A) provides in pertinent part "[a]fter the expiration of the thirty day period provided by App. R. 4(A) for the filing of a notice of appeal as of right in criminal cases, an appeal may be taken only by leave of the court to which the appeal is taken." This language makes it clear that a delayed criminal appeal under Ohio R. App. P. 5 is not an appeal of right, but an appeal only by leave of court. Ohio courts have held that this language means that leave to appeal is committed to the sound discretion of the Courts of Appeals. *State v. Fisher,* 35 Ohio St. 3d 22, 517 N.E. 2d 911 (1988); *City of Toledo v. Reasonover*, 115 Ohio App. 434, 185 N.E. 2d 500 (Ohio App. 6th Dist. 1962); *State v. Bednarik*, 101 Ohio App. 339, 123 N. E. 2d 31 (Ohio App. 7th Dist. 1954); *State v. McGahan*, 86 Ohio App. 283, 88 N.E. 2d 613 (Ohio App. 10th Dist. 1949).

Since Petitioner did not file a notice of appeal within thirty days of final judgment of conviction, he had not appeal of right under Ohio law and therefore no federal constitutional right to appointed counsel for any appeal he might have been granted or indeed any right to have an attorney appointed to assist him in applying for a delayed appeal. Ground One is without merit.

Since he had no right to appeal, Petitioner seems to be arguing in Ground Two that the denial of his motion for delayed appeal was somehow unconstitutional. In part he suggests that the Ohio penal system operates unconstitutionally in general because it would preclude any indigent criminal defendant from filing a notice of appeal within thirty days. Alternatively, he suggests that at least in his own case, it was unconstitutional to deny him a delayed appeal because he acted expeditiously.

This claim is procedurally defaulted by Petitioner's failure to fairly present it to the Ohio courts. In neither his Motion for Delayed Appeal nor his Memorandum in Support of Jurisdiction

in the Ohio Supreme Court does he suggest that it is unconstitutional to deny leave to file a delayed appeal, either because of conditions generally in the Ohio criminal system or because of his specific facts.

Aside from the procedural default, this Ground for Relief is without merit. If a State is not bound constitutionally to create appellate review, *a fortiori* when it does so, it can place limits on that process. Petitioner cites no law suggesting in general that a thirty-day time limit on taking an appeal in a criminal case is somehow unconstitutional. Fed. R. App. P. 4(b) sets a fourteen-day limit for appeals in federal criminal cases, which certainly suggests that the United States Supreme Court, which adopted the App. R. 4, does not think that is an unreasonable amount of time.

Nor has Petitioner demonstrated a constitutional violation in the Ohio Appellate Rules as applied to his case. He acknowledges that whether or not to grant a delayed appeal under Ohio R. App. P. 5 is within the sound discretion of the appellate court. (Petition, Doc. No. 1, PageID 21, citing *McGahan, supra*, and *Bednarik, supra.*) He seems to be arguing, although he does not use the words, that it was an abuse of discretion for the Court of Appeals to deny his Motion for Delayed Appeal. However, even if that were true, a state court judge's abuse of his or her discretion does not create a federal due process violation. *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995).

Moreover, upon review of the facts, this Court cannot find an abuse of discretion in the Court of Appeals' denial. Petitioner is simply wrong in claiming that he had to gather a copy of the judgment entry and a certificate from the inmate cashier before filing a notice of appeal. Ohio R. App. P. 3 provides "[f]ailure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal . . . ." If Petitioner had sent a simple notice of appeal to the Clerk of Courts within the thirty days after judgment, he would have preserved his

appeal of right and all of the procedural rights that go with that, including the federal constitutional rights to appointed counsel and a free transcript.

Petitioner further claims he was "delayed from December 20 - December 31, 2007, due to the Holidays." (Motion for Delayed Appeal, PageID 89) Delayed how? The Postal Service operates during the Christmas holidays. While the Clerk's Office may have been closed on the legal holiday for Christmas Day, it would not have been otherwise closed during this period.

Petitioner claims he did not know about his right to appeal before he got access to the law library. However, his right to appeal and the time within which an appeal must be taken is printed on the guilty plea form he signed. Ignorance of the law will not excuse this failure to file in time. *Bonilla v. Hurley,* 370 F.3d 494 (6th Cir. 2004).

Petitioner was deprived of no federal constitutional right when the Court of Appeals denied his Motion for Delayed Appeal. Ground Two is therefore also without merit.

## Ground Three

In Ground Three, Petitioner claims he received ineffective assistance of trial counsel. After reciting the standard for ineffective assistance of trial counsel embodied in *Strickland v. Washington*, 466 U.S. 668 (1984), Mr. Adams particularizes this claim as follows:

> Counsel in the case at bar clearly did not have to [sic] time to conduct a proper investigation into the facts of this case, and be able to competently advise his [sic²] client on how he should proceed. In

---

² Petitioner continually uses the male pronoun to refer to his counsel who was Ms. Catherine Adams. Whether this is the result of using "canned" arguments from some other case or the assistance of another inmate who does not know the facts is unknown to the Court.

> fact, counsel did not present any defense at all and exposed his [sic] client to a sentence of "Life Without Parole." . . . Moreover, not presenting a viable defense, or at the v ery least attempting to mitigate the circumstances cannot be found to be a tactical decision, it simply represent [sic] ineffective assistance of counsel."

(Petition, Doc. No. 1, PageID 22-23.)

Petitioner wants to present this claim as if Ms. Adams was appointed the same day as the arraignment and pleaded Petitioner guilty without anything more. The record plainly belies this spin on the facts. At the time of the plea, Ms. Adams had been in negotiations with the prosecutor for at least two weeks. She had reviewed discovery provided by the prosecutor and negotiated away an aggravated trafficking count, a firearm specification, and, most critically, a capital specification which would appear to have been justified from the facts the prosecutor recited and Petitioner admitted were true.

Petitioner also argues that his plea was involuntary because he was not advised by Ms. Adams of the consequences of pleading guilty. However, the record plainly belies this claim as well. After Judge Ringland's thorough direct colloquy with Mr. Adams about his rights, the judge also inquired if Ms. Adams had gone over those rights and the consequences of a plea, including possible sentences, and Petitioner responded that she had.

Thus the face of the record does not support a claim of ineffective assistance of trial counsel. He adverts in the Motion for Delayed Appeal to a claim of ineffective assistance of trial counsel he wanted to make on direct appeal. If that claim is based upon the record before this Court, it plainly is without merit.

If Petitioner is claiming that he knows some facts which could have been offered as a viable defense or in mitigation which he told his lawyer about and that she was ineffective for failure to

investigate those facts further or to present them to the trial court, Petitioner has procedurally defaulted on any such claim. Any such facts are outside the record which would have been before the appellate court. Therefore they would have had to be presented to the trial court in a petition for post-conviction relief under Ohio Revised Code § 2953.21. However, Mr. Adams has presented no such petition and the time for doing so has now expired.

Ground Three for Relief is therefore without merit in its entirety.

## Conclusion

Based on the foregoing analysis, the Petition herein should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and leave to appeal *in forma pauperis*.

June 2, 2010.

s/ **Michael R. Merz**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it

as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

J:\Documents\Adams Habeas Merits R&R.wpd